UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL HOA, | No. C-12-2078 EMC |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |
| MATHEW CATE, *et al.*, | |
| Defendants. | **(Docket No. 127)** |

## I. INTRODUCTION

Plaintiff Paul Hoa, represented by his guardian ad litem Nancy Tan, brought suit against employees of San Quentin State Prison (the "Prison") Raymond Matteucci, Thomas Alioto, George Moon, Tammatha Foss, Ronald Chan, and David Moore, all in their individual capacities (collectively, "State Defendants"), and David Lopez, Gregory Stagnitto, Bridge Transport, and Stag Leasing, Inc. (collectively, "non-State Defendants"), arising from an accident at the Prison which severely injured Plaintiff and left him paralyzed. Plaintiff alleged against State Defendants two causes of action under 42 U.S.C. § 1983: (1) Deliberate Indifference and (2) Cruel and Unusual Punishment. Plaintiff alleged against non-State Defendants negligence, negligent supervision, and negligent training.

Before the Court is State Defendants' Motion to Dismiss (the "Motion") Plaintiff's third amended complaint ("TAC" (Docket No. 119)) pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and for qualified immunity. Docket No. 127. The Court **GRANTS IN PART** and **DENIES IN PART** the Motion, as set forth below.

## II.  FACTUAL BACKGROUND

Plaintiff was a prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR") at San Quentin State Prison (the "Prison").  As a condition of incarceration, Plaintiff was required to work.  TAC ¶ 8.  Around June 2011, Plaintiff was assigned to assist commercial vehicles entering the area near the waterfront warehouse ("Work Area") back up to an unloading ramp or gravel area, and unload and load.  TAC ¶ 122.  The ramp was installed in late June or early July of 2011.  TAC ¶ 85.  On July 27, 2011, Plaintiff was severely injured when a truck trailer reversed without receiving any signal to do so, and crushed Plaintiff against the ramp.  TAC ¶¶ 10, 143.  Plaintiff lost all use of his limbs and torso, and requires a ventilation machine to assist him breathe.  TAC ¶ 12.

The TAC describes the routine for unloading deliveries from trailer trucks as follows.  The trailer trucks would enter the Work Area, then reverse, stopping at a distance between three to ten feet from the ramp.  TAC ¶ 109.  Either an inmate worker or a supervisor would open the trailer doors.  *Id*.  Then the truck would then back up to the ramp or gravel.  TAC ¶ 110.  Then the inmate workers would offload the vehicle with either forklifts or pallet jacks.  *Id*.  During this time, the truck drivers were not allowed to exit their vehicles; they were required to keep their engines running and the windows up.  TAC ¶¶ 105-106.  Drivers could not hear shouts from outside the vehicle.  TAC ¶ 111.  Communication with the drivers was performed with hand signals.  TAC ¶ 105.

The TAC alleges that the procedure for the trucks to back up posed serious risks of harm.  The procedure required inmate workers to position themselves at the rear blind spot of trailer trucks, some of which weighed 16,000 pounds without cargo. TAC ¶ 64.  The Work Area had no mirrors for drivers to check the rear blind spot.  TAC ¶ 103.  The point at which the truck was required to stop was never designated by any markings or physical indicators.  TAC ¶ 86.  The distance of three to ten feet between the trailer and the ramp – at which point the trailer would start backing up to the ramp – was too short; inmate workers could easily be hit by the reversing trailer without time to get out of the way.  TAC ¶¶ 9, 94.  In fact, there were several incidents where an inmate worker was

almost hit by a truck when it was backing up to the ramp, but either the truck stopped or the inmate jumped out of the way. TAC ¶ 112.

The TAC alleges further lack of safety equipment and precautionary measures. The Prison purchased wheel chocks – blocks designed to immobilize a truck's wheels – but never used them. TAC ¶ 76. The ramp was not properly installed; it was not bolted to the ground or wall as required, and moved when a forklift was driven on it. TAC ¶ 94. The Work Area was noisy and congested due to "the presence of motor vehicles, trailers, pedestrians, supplies, pallet jacks, forklifts, and adjacent buildings." TAC ¶ 65. There were no marked traffic lanes or traffic controls. *Id*. Plaintiff also alleges that inmate workers, including himself, "were repeatedly informed by the supervisors that they needed to increase the pace for unloading Prison supplies." TAC ¶ 80.

The TAC also alleges the lack of uniform or written procedures for backing up of commercial vehicles that the inmates could consistently follow. TAC ¶ 36. A "best practices" was created by three of the supervisors, but it was not uniformly followed. TAC ¶¶ 34-35. Each supervisor used different procedures and gave inmate workers different verbal instructions on the procedure to be used for backing up, which was confusing. TAC ¶¶ 113, 126, 156.

Plaintiff alleges that all of the State Defendants knew of the risks of harm. Plaintiff and other inmates complained to supervisors Matteucci, Chan, Moore, Moon, Alioto, and Riley "about the danger of being crushed and hit by a vehicle, that there were several incidents where a commercial vehicle was backing up and an inmate was placed between the truck and the ramp but either the truck stopped or the inmate jumped out of the way." TAC ¶¶ 112, 115. They also complained to these supervisors that "procedures at the Work Area were different for each supervisor and thus confusing and not safe." TAC ¶¶ 113, 115. Plaintiff alleges on information and belief that these supervisors relayed the complaints to Foss. TAC ¶ 114.

Further, the Associate Warden of the Prison had received a letter from California's Department of Industrial Relations, Division of Occupational Safety and Health ("OSH"), dated March 12, 2008, informing her that they had received a complaint alleging that "[e]mployees (forklift operators and people on the ground) engaged in truck loading operations are exposed to vehicular traffic with no safety protections – no vests, traffic doesn't stop at stop signs, no traffic

control." TAC Exh. 1. The letter directs the Prison to investigate the alleged conditions, specify corrective actions that were taken, and notify the OSH accordingly. *Id.*

The Prison devised a "Waterfront Warehouse Traffic Control Plan" (the "Plan") to "insure the safety of all staff, inmates, and visitors in the area of the Water Front Warehouse." TAC Exh. 2. The Plan requires: "[a]ll workers loading, unloading, and driving forklifts must wear a vest to make each work [sic] visible to traffic in the area (exception: inmates working in that area must wear the high visible lime green jump suit)" and "[a]ll traffic in that area will be controlled by a flag man when deliveries, loading and unloading operations are taking place." *Id.* The Plan also requires that "[a]ll safety concerns, hazards, or failure to follow [the Plan]" be reported to the Prison's Safety Officer. *Id.*

The OSH subsequently conducted an inspection (it appears some time in April 2008) and required the Prison to submit training records of inmate warehouse workers, forklift drivers, and flag men, and safety instructions for training inmates on traffic control. TAC Exh. 3. The Prison responded that "[t]raining was provided to the inmate workers but was not documented," and provided some documentation regarding training of the forklift drivers and flagmen. *Id.*

Plaintiff alleges that he received no training on assisting trucks in backing up or unloading trucks. TAC ¶ 124. The training he received consisted of watching a video that did not pertain to these tasks. *Id.* He only received a lime green jumpsuit and materials on the safe operation of a forklift. TAC ¶¶ 123-24. Plaintiff alleges that there was no traffic training or flagmen training for the relevant time period. TAC ¶ 73.

### III. PROCEDURAL BACKGROUND

Plaintiff alleges against all State Defendants, in their individual capacities, two causes of action under 42 U.S.C. § 1983: (1) Deliberate Indifference and (2) Cruel and Unusual Punishment. Plaintiff alleges that State Defendants violated their duties under the Eighth Amendment to take reasonable measures to guarantee the safety of inmate workers assigned to unload the truck trailers. Plaintiff alleges against the driver of the truck, David Lopez, and his employers negligence, negligent supervision, and negligent training.

4

1    The Court previously dismissed all claims against California, CDCR, and San Quentin State Prison. Docket No. 29. It also dismissed claims against the Secretary of the CDCR, in both his official and individual capacities. Docket Nos. 29, 42. The Court permitted Plaintiff to take discovery to determine whether "there is a plausible basis for liability on the part of an employee or supervisor at the prison." Docket Nos. 42, 64. After taking discovery, Plaintiff filed the third amended complaint. Docket No. 119. State Defendants move to dismiss the TAC pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and assert qualified immunity.

## IV.  DISCUSSION

A.   Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . 'to state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party," though "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).

B.   Deliberate Indifference to Inmate Safety

As a preliminary matter, the Court construes both causes of action – (1) Deliberate Indifference and (2) Cruel and Unusual Punishment – as one for violation of the Cruel and Unusual Punishments Clause of the Eighth Amendment, for deliberate indifference to an inmate's safety.

1.   Eighth Amendment Standard

In its prohibition of "cruel and unusual punishment," the Eighth Amendment imposes duties on prison officials to "'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). A prison official violates the Eighth Amendment when two requirements are met:

> First, the deprivation alleged must be, objectively, "sufficiently serious"; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." For a claim (like the one here) based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.
>
> The second requirement follows from the principle that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." To violate the Cruel and Unusual Punishments Clause, a prison official must have a "sufficiently culpable state of mind." In prison-conditions cases that state of mind is one of "deliberate indifference" to inmate health or safety.

*Id*. at 834 (internal citations omitted). A prison official is "deliberately indifferent" if the official acted or failed to act despite his knowledge of a substantial risk of serious harm. *Id*. at 842.

"More specifically, the Eighth Amendment is implicated in the prison work context only when a prisoner employee alleges that a prison official compelled him to 'perform physical labor which was beyond his strength, endangered his life or health, or caused undue pain.'" *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006) (quoting *Berry v. Bunnell*, 39 F.3d 1056, 1057 (9th Cir. 1994) (per curiam)) (alterations omitted). In *Morgan*, the court held that a prison official had violated the Eighth Amendment, where the official ordered the inmate to continue working with a printing press after the inmate raised a concern about whether it was safe to do so. *Id.* at 1046. The plaintiff had alerted his supervisor that the press he was using bucked, and "almost tore off two of his fingers while he was operating it." *Id*. at 1044. The supervisor told the plaintiff to continue working and to "just be very careful"; they had an urgent printing project and there was no time to stop the press for repairs. *Id*. Subsequently, the press caught the plaintiff's hand and tore off his right thumb. *Id.* The court held that the prison official violated the inmate's "constitutional right not to be compelled to perform work that endangered his health and caused undue pain." *Id*. at 1047.

2. Application

a. <u>Plaintiff Has Plausibly Alleged a Violation of the Eighth Amendment</u>

Plaintiff has plausibly alleged that his work conditions posed a substantial risk of serious harm. Assisting a trailer truck back up, positioned behind the trailer with only three to ten feet of space between the trailer and an immovable ramp without the precautions and procedures identified

6

in the TAC, poses a substantial risk of being hit by the trailer. This is borne out not only by Plaintiff's own accident, but also by several incidents where other inmate workers were almost hit by a truck when it was backing up to the ramp. TAC ¶ 112.

Plaintiff has alleged that each State Defendant knew of the risks. In particular, Plaintiff and other inmates complained to supervisors Matteucci, Chan, Moore, Moon, Alioto, and Riley "about the danger of being crushed and hit by a vehicle, that there were several incidents where a commercial vehicle was backing up and an inmate was placed between the truck and the ramp but either the truck stopped or the inmate jumped out of the way." TAC ¶¶ 112, 115. They also complained to these supervisors that "procedures at the Work Area were different for each supervisor and thus confusing and not safe." TAC ¶¶ 113, 115. Plaintiff alleges on information and belief that these supervisors relayed the complaints to Foss. TAC ¶ 114. Although each State Defendant had a duty to implement safety procedures and train the inmate workers, they failed to address the inmates' complaints. TAC ¶¶ 18-21, 24, 26, 33, 44. The alleged similarity of these prior incidents to the accident which befell Plaintiff sufficiently assert the State Defendants' knowledge of and deliberate indifference to the serious risk to Plaintiff. Moreover, as in *Morgan*, Plaintiff was required to perform labor as a condition of confinement. TAC ¶ 117 ("Every able-bodied person committed to the custody of the Secretary of the Department of Corrections and Rehabilitation is obligated to work as assigned by department staff and by personnel of other agencies to whom the inmate's custody and supervision may be delegated.") (quoting 15 C.C.R. § 3040(a)). Given the allegations of the TAC must be assumed to be true and all reasonable inferences therefrom must be drawn in Plaintiff's favor, Plaintiff has stated a plausible Eighth Amendment claim.

State Defendants argue that Plaintiff's allegation that Matteucci was standing behind the trailer two seconds before it reversed and hit Plaintiff "demonstrates that Matteucci did not perceive a threat or serious safety issue at the time." Mot. at 11; TAC ¶ 142. However, it appears inmate workers would typically remain behind a trailer and assist it to back up after a supervisor unlocked it, which would expose the inmates to a greater risk of harm. *See* TAC ¶¶ 109-110.

1    Thus, Plaintiff has plausibly alleged that each State Defendant violated his Eighth
2 Amendment right "not to be compelled to perform work that endangered his health and caused
3 undue pain." *Morgan*, 465 F.3d at 1047.

         b.    <u>Defendants' Argument That Plaintiff Has Not Met the "Danger-Plus" Standard Lacks Merit</u>

6    State Defendants argue that Plaintiff has not met the "danger-plus" standard set forth in
7 *Osolinski v. Kane*, 92 F.3d 934, 938 (9th Cir. 1996). *Osolinksi* held:

> No cases in this circuit clearly established that a single defective device, without any other conditions contributing to the threat to an inmates' safety, created an objectively insufficiently humane condition violative of the Eighth Amendment. *Hoptowit* involved a condition – bad lighting – which exacerbated the inherent dangerousness of already-existing hazards, such that those hazards "seriously threatened the safety and security of inmates." Appellee has not pled any such exacerbating conditions. In particular, appellee has not pled any conditions which rendered him unable to "provide for [his] own safety" in the sense that they precluded him from avoiding the faulty oven door or rendered him unable to perceive its defective condition.

*Osolinski*, 92 F.3d at 938 (quoting *Hoptowit*, 753 F.2d at 784). In *Osolinski*, the plaintiff inmate had suffered severe burns on his arm when an oven door fell off its hinges. *Id*. at 935. Prior maintenance requests had been submitted on three occasions, but the requested repairs had not been made. *Id.*

However, *Morgan* held that an order to continue working after a prisoner raises safety concerns exacerbates the dangerousness of an existing safety hazard, thus meeting the "danger-plus standard." *See Morgan*, 465 F.3d at 1047 (discussing the "danger-plus standard" as addressed in *Osolinksi* and the cases discussed therein). A prisoner who is required to work under hazardous conditions is unable to "provide for his own safety." Unlike in *Morgan*, the plaintiff in *Osolinski* could have avoided the faulty oven door because, apparently, use of the oven was not required of the plaintiff's work; the oven was in the prison's medical facility's family visiting unit. *Osolinski*, 92 F.3d at 935. Thus, State Defendants' argument lacks merit.

///
///
///

8

      c.    <u>Causation</u>

          i.    <u>State Defendants' Argument of Intervening Cause Lacks Merit</u>

State Defendants assert that Plaintiff does not allege facts showing that "any action or inaction by State Defendants was the actual and proximate cause" of Plaintiff's injury. They essentially argue that State Defendants' failure to implement safe procedures was not the cause; rather, Defendant Lopez's negligence in reversing his vehicle without waiting for Plaintiff to move out of the way and without being signaled that it was safe to reverse was an "unforeseeable intervening cause." Mot. at 8.

State Defendants cite to *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 837 (1996), which held that traditional tort law defining intervening causes that break the chain of proximate causation applies in § 1983 actions. However, as *Van Ort* notes, "a policy is a proximate cause ... if intervening actions were within the scope of the original risk and therefore foreseeable." *Id*. (quoting *Dodd v. City of Norwich*, 827 F.2d 1, 6 (2d Cir.1987), cert. denied, 484 U.S. 1007 (1988)).

Here, the driver's negligence in reversing without waiting for hand signals is within the scope of the original risk identified by Plaintiff. Plaintiff is essentially arguing that, if State Defendants had put in place proper safety procedures and trained their subordinates and inmate workers, then Plaintiff would not have been hit by the trailer. Plaintiff asserts, *inter alia*, that he should not have been between the trailer and ramp with only three feet between them, that there should have been a flagman to signal it was safe to back up, and implies that, with consistent procedures in place, the driver may not have backed up and crushed him. *Cf. Dodd*, 827 F.2d at 6 ("The city contends on appeal that the 'cause' of Dodd's death was his own voluntary act in lunging for the exposed gun . . . . [T]he district court might well find that the city's policy of training its officers to handcuff suspects with guns drawn 'caused' Dodd's death by, in effect, inviting him to lunge for the gun."). Because the driver's intervening act was within the scope of the risk alleged, it did not break the chain of causation.

          ii.    <u>Plaintiff Has Plausibly Alleged Causation by Individual Defendants</u>

Plaintiff has met the Ninth Circuit's standard for causation applicable specifically to claims of deliberate indifference.

> When plaintiffs . . . seek to hold an individual defendant personally liable for damages, the causation inquiry between the deliberate indifference and the eighth amendment deprivation must be more refined. We must focus on whether the individual defendant was in a position to take steps to avert the [] incident, but failed to do so intentionally or with deliberate indifference. In order to resolve this causation issue, we must take a very individualized approach which accounts for the duties, discretion, and means of each defendant.

*Leer v. Murphy*, 844 F.2d 628, 633-34 (9th Cir. 1988). A supervisor may be held liable, in his individual capacity, under § 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207-08 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir.1989)).

> The requisite causal connection can be established by setting in motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury. A supervisor *can be liable in his individual capacity* for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others.

*Id.* at 1207-08 (internal citations, alterations, and quotation marks omitted) (emphasis added). "'[A]cquiescence or culpable indifference' may suffice to show that a supervisor 'personally played a role in the alleged constitutional violations.'" *Id*. at 1208. In particular, "allegations that the actions or inactions of the person 'answerable for the prisoner's safe-keeping' caused his injury [may be] sufficient to state a claim for supervisory liability for deliberate indifference." *Id*.

Plaintiff has plausibly alleged under *Leer* that each of the State Defendants was in a position to take steps to avert the accident by implementing adequate safety procedures but failed to do so. Each was deliberately indifferent because each was allegedly aware of the inmates' complaints of the dangers and incidents of nearly being hit, yet took no action. Further, the TAC alleges Alioto and Riley failed to take action in supervising their subordinates, Matteucci, Chan, Moon, and Moore.

C.  Qualified Immunity

State Defendants assert they are entitled to qualified immunity. Mot. at 15-16.

1. Legal Standard

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2080 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The first question is a question of fact; the second question, a question of law. *Tortu v. Las Vegas Metropolitan Police Dept.*, 556 F.3d 1075, 1086 (9th Cir. 2009).

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 132 S.Ct. 2088, 2093 (2012) (citation and quotation marks omitted). "In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Id*. "This is not to say that an official is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in light of pre-existing law the unlawfulness must be apparent." *Hope v. Peltzer*, 536 U.S. 730, 739 (2002). "Although earlier cases involving 'fundamentally similar' facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding. The same is true of cases with 'materially similar' facts." *Id*. The "salient question" is whether the state of the law gave "fair warning" that the treatment of the prisoner was unconstitutional. *Id*.

2. Application

As discussed in Section A above, Plaintiff adequately has pled the first prong – violation of his Eighth Amendment right.

Plaintiff has also pled the second prong – that the right was clearly established at the time of the challenged conduct. *Morgan* held:

> *Osolinski* . . . clearly established that a safety hazard in an occupational area, the dangerousness of which is exacerbated when a prison official orders a prisoner to continue working with it after the prisoner raised a concern about whether it was safe to do so, constituted a violation of the prisoner's Eighth Amendment rights.

11

> Before Morgan's injury, the contours of this right were sufficiently clear that a reasonable prison official would or should have understood that compelling an inmate to continue operating defective and dangerous prison work equipment would violate the Eighth Amendment.

*Morgan*, 465 F.3d at 1047.

Like in *Morgan*, Plaintiff has alleged a safety hazard in the Work Area and that he was required to work despite evident concerns about the safety of doing so under existing conditions. While *Morgan* and *Osolinski* involved dangerous work equipment, rather than dangerous work conditions, this distinction is immaterial. From *Morgan*, a reasonable officer would have understood that compelling an inmate to continue working under hazardous conditions, after the inmates raise serious concerns whether it was safe to do so, violated his Eighth Amendment right "not to be compelled to perform work that endangered his health and caused undue pain." *Morgan*, 465 F.3d at 1047. That the Eighth Amendment claim alleges subjective awareness of the dangerousness of the working condition and the mens rea of deliberate indifference to Plaintiff's safety tends strongly to negate qualified immunity. Thus, State Defendants are not entitled to qualified immunity.

D.      <u>Injunctive Relief</u>

As State Defendants argue, Plaintiff lacks standing to assert injunctive relief. Plaintiff was granted medical parole and released from CDCR custody in April 2012. Defs.' Request for Judicial Notice Exh A. A plaintiff has the burden of showing the elements of standing: (1) "injury in fact"; (2) "a causal connection between the injury and the conduct complained of"; (3) likelihood "that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). If a plaintiff seeks prospective injunctive relief, "he must demonstrate that he is realistically threatened by a *repetition* of [the violation].'" *Armstrong v. Davis*, 275 F.3d 849, 860-61 (9th Cir. 2001), abrogated on other grounds by *Johnson v. California*, 543 U.S. 499, 504-05 (2005) (quoting *Lyons,* 461 U.S. 95, 109 (1983)).

An injunction against State Defendants will not redress Plaintiff's injury because he is no longer incarcerated in San Quentin. Given the seriousness of his injuries, it is unrealistic that the

alleged violation would be repeated. Thus, the Court dismisses with prejudice Plaintiff's claim for injunctive relief.

E. Punitive Damages

State Defendants assert that Plaintiff cannot seek punitive damages. Punitive damages are permitted "in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). The Court denies State Defendants' motion to dismiss Plaintiff's claim for punitive damages because Plaintiff has plausibly alleged "deliberate indifference," which is a higher showing than the reckless indifference required for punitive damages. *See Farmer*, 511 U.S. at 837-39 (likening "deliberate indifference" under the Eighth Amendment to recklessness in the criminal law, which requires conscious disregard, rather than civil-law recklessness, where the defendant should have known of the risk). Plaintiff alleges a plausible claim for punitive damages.

## V. CONCLUSION

The Court dismisses with prejudice Plaintiff's claim for injunctive relief. The Court **DENIES** State Defendants' Motion with respect to all other claims. State Defendants are not entitled to qualified immunity.

This order disposes of Docket No. 127.

IT IS SO ORDERED.

Dated: May 23, 2014

_____
EDWARD M. CHEN
United States District Judge

13